## Case No. 10,620.

### The OUACHITA.

[Blatchf. Pr. Cas. 306.] [1]

District Court, S. D. New York. Dec. 31, 1862. [2]

PRIZE — FALSE DESTINATION ON THE PAPERS OF THE VESSEL—SPOLIATION OF PAPERS.

1. The entire cargo of the vessel was contraband of war, and was thrown overboard while she was being chased, before her capture; and her claimant was part owner of another vessel recently condemned in this court for a violation of the same line of blockade.

2. If the vessel arrested as prize was acting in violation of public law, she is amenable to trial and condemnation therefor in behalf of the United States, whether the persons or means employed in making the seizure had authority to make it or not. It is enough that the government comes into the national court demanding the condemnation of an offender; and the court never inquires whether the party or thing proceeded against has been regularly or irregularly brought under attachment or complaint.

3. Vessel condemned for an attempt to violate the blockade and to introduce into the enemy's country a cargo of articles contraband of war.

4. A motion to redeliver to the master his nautical instruments denied, he having been actively engaged in acts of hostility against the rights of the United States and the public law.

[3] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Samuel Blatchford, Esq.]
[2] [Affirmed in Case No. 10,621.]

In admiralty.

BETTS, District Judge. This vessel was captured at sea, near the coast of the Carolinas, October 14, 1862, having, during the chase of her by the United States steamer Memphis, thrown overboard, before capture, her cargo. The prize was sent to this port for adjudication, and was libelled in this court November 28, 1862. Thomas S. Begbie intervened and filed his claim to the vessel December 16, 1862.

1. He alleges that he is a British subject, and a resident of London, England.

2. He denies that the vessel is prize of war, and asserts that she was seized by the Memphis, a British merchant vessel, owned partly by the claimant and partly by Denny, another British subject and resident, and that the United States government had no rightful possession and ownership of the Memphis when she was used in the capture, but that she was unlawfully placed by the court at the disposal of the United States before her condemnation, and is not now fully condemned, the sentence being on appeal before the circuit court, and that, therefore, there was no legal seizure. A test oath to the claim was made by Captain T. S. Gilpin, December 3, 1862.

The vessel had on board a certificate of registry, executed at London, January 14, 1862, to Thomas Sterling Begbie, and an agreement with T. S. Gilpin, as master, and a crew, for a voyage of about twelve months, dated London, August 4, 1862, from London to British North America, the American States, &c., &c., to a final discharge in the United Kingdom. The register of the vessel has indorsed on its back a note of its deposit at the customhouse, St. George's, Bermuda, September 15, and its return to the master, September 20, 1862. There was also found on board a letter to the master, dated Nassau, August 26, 1862, from Benjamin W. Hart, giving instructions to him how to conduct his vessel to avoid the Yankee cruisers; and another letter to T. S. Begbie, dated October 3, 1862, without place or address or signature, likewise giving suggestions and cautions respecting United States cruisers molesting the vessel and voyage. There was on board a memorandum of cargo, specifying wholly articles contraband of war, dated October 3, 1862, but having no signature or place of execution written upon it. The prize was cleared at St. George's, Bermuda, September 30, 1862, bound for Havana. The papers above referred to are all that were produced from the vessel on her capture, and the prize-master states, in his deposition, that they are all that were found on board the prize. He further states that the vessel was chased from 6 a. m. to 3 p. m. before she surrendered. The master, on his examination, says, that when the vessel left Bermuda she had on board the ship's register. the shipping articles. a clearance, an invoice of cargo, one bill of lading, and the letter from Mr. Hart. He is unable to remember what other papers or letters were on board at the time, but says that none of those papers, and no papers connected with the vessel, were destroyed. The mate speaks of a log-book kept by him on board. The vessel was captured at sea, off the coast of the Southern states. The master says that it was in 32° north latitude, that he does not know the longitude, that he supposes she was from 150 to 200 miles off the coast, and that he had heard they were about opposite to Wilmington. The mate testifies that he supposes the vessel was 50 or 100 miles off the coast. The second mate says that he understood, at the time, that the capture was off Wilmington, but he was not told how far. If the master is correct in his representation of the latitude, the vessel was about opposite to Charleston; and if the longitude had been furnished by the log, or other competent proof, it could have been readily ascertained how near she had approached the land. At all events, it is manifest she must have been wide of any reasonable route from St. George's to Havana.

If this cause is appealed, it may merit more detailed reasoning in support of the decision to be rendered; but, as it is represented to the court upon these proofs and the argument of the respective counsel, I hold as follows:

1. The suspicion is impressive and cogent that the representation, in the clearance of the vessel, that the voyage was from St. George's, Bermuda, to Havana, was simulated and false, and that she was so immediately in a course towards blockaded ports as to justify the presumption that she was attempting to enter one of them.

2. All the ship's company were fully aware of the war and of the blockade of the ports towards which she was running.

3. The absence of the log-book, of the invoice of the cargo, and of the bill of lading, proved to have been with the vessel, affords, unexplained, vehement presumption of their intentional destruction or suppression by the ship's company.

4. The vessel was fitted out for the voyage at St. George's, her entire cargo being contraband of war; and it also appears, in the course of the evidence, that the owner of this vessel was also part proprietor of the Memphis, recently condemned in this court for an illegal violation of the same line of blockade.

The point made for the claimant, that the capture of this vessel by the Memphis is void at law, on the ground that the latter vessel was incompetent to be employed to that end or in that service, cannot be regarded as of any weight. She was captured by a vessel commanded and employed by the United States naval forces, and acting under its flag and authority. If the vessel arrested was acting in violation of public law, she is amenable to trial and condemnation therefor, in behalf of the United States, whether the person or means employed in making the seizure had authority to make it or not. It is enough

that the government comes into the national court demanding the condemnation of an offender; and the court never inquires whether the party or thing proceeded against has been regularly or irregularly brought under attachment or complaint. The government is entitled to have the violated laws vindicated by the punishment of the offender, without question as to the propriety of the acts or agencies used in bringing the offence to judgment. The Amiable Isabella, 6 Wheat. [19 U. S.] 1.

There must be a decree of condemnation and forfeiture of the vessel. for being employed in an attempt to violate the blockade of the ports of the Southern states, and to introduce therein a cargo of articles contraband of war.

NOTE. My impression is that the question raised between the parties about the surrender to the master of this vessel of the nautical instruments, as being his personal property, was deferred for further hearing. If a delay is not asked for by either party, the court is prepared to dispose of the point.

January 2, 1863, ordered, that the motion for the redelivery of nautical instruments to the master be denied, he having. as appears in proof, been actively engaged, on board of his vessel, in acts of hostility against the rights of the United States and the public law.

This decree was affirmed, on appeal. by the circuit court July 17, 1863. [Case No. 10,621.]